OPINION OF THE COURT
Ira Gammerman, J.
In this medical malpractice action the plaintiff’s attorney was retained and the action instituted after July 1, 1985. Thus, when on January 17, 1989 the jury returned a verdict in favor of the plaintiff for $500,000 past and $5,000,000 future damages, it became necessary for the court to apply the provisions of CPLR 5031.
The jury’s $5,000,000 award for future damages was itemized as follows: $2,000,000 for loss of earnings for a period of 44 years; $500,000 for therapy for a period of 14 years; $500,000 for attendant care for a period of 50 years; $2,000,000 for pain and suffering for a period of 58 years.
Pursuant to CPLR 5031 (b), the court is to enter a lump-sum judgment for the past damages awarded (here $500,000) and for future damages not in excess of $250,000. The statute further provides that "any lump sum payment of a portion of future damages shall be deemed to include the elements of future damages in the same proportion as such elements comprise of the total award for future damages as determined by the trier of fact.”
Thus, a portion of the $250,000 lump sum must be deducted from each of the awards for future losses in appropriate proportion. The $5,000,000 award for future losses can be analyzed as follows: 40% for loss of earnings; 40% for pain and suffering; 10% for therapy; 10% for attendent care.
Allocating those percentages to the $250,000 lump-sum award reduces the awards for future damages as follows: loss of earnings — $1,900,000 (reduced by $100,000 or 40% of $250,000); therapy — $475,000 (reduced by $25,000 or 10% of $250,000); attendant care — $475,000 (reduced by $25,000 or 10% of $250,000); pain and suffering — $1,900,000 (reduced by $100,000 or 40% of $250,000).
These deductions in these percentages can be made because the court rejected defendant’s claim pursuant to CPLR 4545 (a) that the award for therapy should be eliminated or substantially reduced because of infant plaintiff’s entitlement to therapy as part of his public school education. For the court to find "with reasonable certainty”, as the statute requires, that *729 a future cost or expense will be replaced in all or in part it must determine that "plaintiff is legally entitled to the continued receipt of such collateral source, pursuant to a contract or otherwise enforceable agreement”. No proof of the existence of such contract or agreement was received.
Assuming that there was proof sufficient to reduce or eliminate the award for therapy (or any of the other awards for future damages), the court would have used the proportions of the individual awards as they existed after the reductions for collateral source payments in making the reduction for the $250,000 lump-sum payment. Thus, for example, had the court eliminated the award for future therapy here, the award of future damages would be reduced to $4,500,000. In that event, the awards for future losses would be: approximately 44.5% for loss of earnings; approximately 44.5% for pain and suffering; approximately 11% for attendant care. The award for loss of earnings would, therefore, be reduced by 44.5% of $250,000 as would the award for pain and suffering with the award for attendant care being reduced by approximately 11% of $250,000.
It next becomes necessary to determine the present value of the now reduced future payments to be made to the plaintiff. The first step is to divide the reduced payments by the number of years determined by the jury (with the exception of the award for pain and suffering which is divided by 10). That produces the following result: loss of earnings — $43,181.82 in the first year increased at 4% per year compounded annually for 44 years; therapy — $33,928.57 in the first year increased at 4% per year compounded annually for 14 years; attendant care — $9,500 in the first year increased at 4% per year compounded annually for 50 years; pain and suffering — $190,000 in the first year increased at 4% per year compounded annually for 10 years.
Pursuant to CPLR 5031 (e) the attorney’s fee is to be based on the present value of an annuity contract that will provide for the above payments. The statute requires that such present value be "determined in accordance with generally accepted actuarial practices by applying the discount rate in effect at the time of the award”.
Leaving aside the question of what discount rate is to be used, it must be determined whether in computing present value in accordance with generally accepted actuarial practices the fact that a substantial portion of the annuity is *730 nonguaranteed, that is, terminates with the death of the plaintiff, should be considered. It can be argued that the possible premature demise of the plaintiff is a factor that would be considered by an actuary in determining present value. The statute, however, provides that present value determination shall be made by applying the discount rate to the full amount of the remaining future damages and further that the period of time used to calculate the present value of the annuity contract shall be the period of years determined by the trier of fact, except that the period of time applicable to the pain and suffering award should be no more than 10 years. If the possible early death of the plaintiff is considered in calculating present value then such calculation would be on less than the full amount of the remaining future damages and would be based upon a period of years less than that determined by the jury. Thus, in computing present value, the court will not consider the possibility of infant plaintiff’s early death.
Over the past several years, at least nine economists have testified (for both plaintiff and defendant) in cases involving claims for future losses.[1] In discussing the appropriate discount rate to be used in reducing future losses to present value, the testimony of all nine fell within the range of 6% to 8%. The court, thus, is adopting a discount rate of 7.5%.[2] The use of such a discount rate (at the upper end of the 6% to 8% range) is, in my view, in keeping with the intent of the Legislature. A higher discount rate reduces the attorney’s fee thus providing greater payment to the client and further serves to reduce the defendant’s premium (or cost) for the annuity policy required by the judgment.
Reducing the future payments to present value using the *731 7.5% discount rate results in the following: present value of award for loss of earnings — $1,000,477; present value of award for therapy — $380,125; present value of award for attendant care — $232,154; present value of award for pain and suffering —$1,617,480, for a total of $3,230,263.
In dealing with the computation of the attorney’s fee, the statute adopts a procedure that is somewhat circular. CPLR 5031 (c) provides that the attorney’s fee is to be based upon "the present value of the annuity contract purchased to provide payment of such future periodically paid damages pursuant to subdivision (e) of the section.” Thus, before one can compute the attorney’s fee it is necessary to determine the present value of the annuity contract as set forth in. subdivision (e). However, subdivision (e) refers to the amount of the award after making any adjustment prescribed in subdivisions (b), (c) and (d). Were the statute to be literally interpreted it would not be possible to compute the attorney’s fee until the present value of the annuity contract is determined and the present value of the annuity contract cannot be determined until the attorney’s fee is calculated and deducted.
Thus, in effect, two calculations must be made. A calculation of the attorney’s fee based on a determination of the present value prior to the deduction of the attorney’s fee and a second calculation to determine the future payments to plaintiff after deduction of the attorney’s fee.
An attorney retained after July 1, 1985 in a medical malpractice case is entitled to the following fee: 30% of the first $250,000 recovered; 25% of the next $250,000 recovered; 20% of the next $500,000 recovered; 15% of the next $250,000 recovered; and 10% of any amount recovered in excess of $1,250,000.
The attorney’s fee in connection with the present value of future payments, here $3,230,236, is $360,523 (20% of $250,000; 15% of $250,000 and 10% of $2,730,236). The attorney’s fee on future damages must then be allocated to the specific awards for future damages and the periodic payments to the plaintiff must then be reduced by the amount of that allocated attorney’s fee.
The attorney’s fee is to be allocated to each item of future damage in proportion to the percent of the present value of that item to the over-all present value. Thus, for example, approximately 30.97% of the attorney’s fee for future damages *732 is to be allocated to the award for loss of earnings. Using that same method of calculation, the attorney’s fee on future damages is allocated as follows: $111,662 to the award for loss of earnings; $42,425 to the award for therapy expenses; $25,911 to the award for attendant care; $180,525 to the award for pain and suffering.
Once these allocations are made, the initial periodic payments to the plaintiff need to be recalculated. Using loss of earnings as an example, were the infant plaintiff to receive the actual award made by the jury he would be paid $43,181.81 in the first year and would continue to receive such payment (assuming he were alive) increased at 4% per year compounded annually for 44 years. In order to reduce that amount, the attorney’s fee allocated to that item of damage, $111,662, must be divided by 44 and the quotient, $2,537.77, deducted from the previously calculated initial payment of $43,181.81.
Using that method of calculation, the plaintiff is entitled to the following payments for the following items of future damage: for loss of earnings — $40,644.04 in the first year increased at 4% per year compounded annually for 44 years; for therapy — $30,898.21 in the first year increased at 4% per year compounded annually for 14 years; for attendant care— $8,981.80 in the first year increased at 4% per year compounded annually for 50 years; for pain and suffering— $171,847.50 in the first year increased at 4% per year compounded annually for 10 years.
The court is, therefore, entering a judgment in favor of the plaintiff and against the defendant for a lump sum in the amount of $1,110,523 representing $750,000 ($500,000 past damages and $250,000 for future damages) plus an attorney’s fee on future damages of $360,523. The defendant (or his insurance carrier) is directed to purchase an annuity contract issued by a carrier designated as qualified by the Superintendent of Insurance to be approved by the court which will provide for the following annual payments, in equal monthly installments, in advance to the infant plaintiff: $40,644.04 per year for 44 years, increased annually at 4%, compounded annually; $30,898.21 per year for 14 years, increased annually at 4%, compounded annually; $8,981 for 50 years, increased annually at 4%, compounded annually; $171,947.50 per year for 10 years, increased annually at 4%, compounded annually. That annuity contract shall reflect the provisions of CPLR 5035 relating to the effect of the death of the judgment *733 creditor upon the liability for payment of the installments. A copy of the annuity contract is to be provided to plaintiffs attorney. The plaintiff is entitled to prejudgment interest from the day of the verdict, January 27, 1989. That interest is to be computed on the net present value of the award $3,980,236. The daily interest is, therefore, $981.41, 13.77% of which is to be allocated to the attorney’s fee and 86.23% to the net recovery to infant plaintiff. The total amount of interest due to this date is $96,178.18. Thus, the infant plaintiff is entitled to and shall recover from the defendant an additional sum of $82,934.45 and the attorney for the plaintiff shall recover the additiónal sum of $13,243.73. The attorney for plaintiff shall also recover costs as taxed in the amount of $1,127.50.
The plaintiff shall have execution for each item of the above judgment.

. Paul Wachtell, chairman of the Department of Economics, Graduate School of New York University; Dean W. Morse, retired senior research associate at Columbia University; Morton J. Jaffee, professor at Baruch College; Conrad Berenson, professor at the Graduate School of Business, City University of the City of New York; Alvin Mickens, professor at the State University of New York; Lee Seplaki, professor at Rutgers University; Thomas K. Fitzgerald; Anna Dutka, senior research associate at Columbia University; and Cono Casella, professor at Dowling College, Oakdale, New York.

. It would be a substantial assistance to both the Bench and Bar to have the discount rate referred to in CPLR 5031 (e) firmly established rather than have different discount rates set by different courts. It is suggested that the Legislature amend CPLR 5031 to insert a specific discount rate.