*1002 OPINION OF THE COURT
Jacqueline M. Koshian, J.
DECISION
On February 14, 1991, after hearing this personal injury action, a jury awarded the plaintiff, Eric Rohring, a verdict for $275,311 past damages and $2,226,000 future damages, thereby requiring this court to apply the provisions of CPLR 5041, every Judge’s nightmare. The jury itemized the future damages as follows: (a) medical expenses for a period of 35 years at $363,500; (b) loss of earnings for a period of 25 years at $1,600,000; (c) pain and suffering for a period of 35 years at $200,000; (d) replacement cost of wood heat for a period of 25 years at $12,500; and (e) loss of household services for a period of 25 years at $50,000. It should be noted here that although the jury determined the term for future pain and suffering to be 35 years, CPLR 5041 (e) mandates 10 years or less in the calculation. The jury also awarded the plaintiff, Charlene Rohring, the sum of $20,000 on her derivative claim, which is not the subject of this decision. A hearing with regard to determining judgment pursuant to CPLR article 50-B was held on July 30,1991.
This writer is aware of the leading case in the world of CPLR article 50-A, namely, Ursini v Sussman (143 Misc 2d 727), however, after having read and reread this statute from the time of its enactment to the time of this decision, and having reacted to it with amazed curiosity, I find I do not entirely agree with Ursini. Our subject case is a CPLR article 50-B matter while Ursini is a CPLR article 50-A.
CPLR 5041 directs us to do the following: skipping subdivision (a) which does not apply here, and reading subdivision (b), this court "shall enter judgment in lump sum for past damages, for future damages not in excess of two hundred fifty thousand dollars, and for any damages, fees or costs payable in lump sum or otherwise under subdivisions (c) and (d) of this section. For the purposes of this section, any lump sum payment of a portion of future damages shall be deemed to include the elements of future damages in the same proportion as such elements comprise of the total award for future damages as determined by the trier of fact.” So far so good. That portion of attorney fees related to past damages and to the first $250,000 of the future damages, poses no problem. The evidence herein sets the fee at 33Vá% of the award, *1003 therefore, with reference to the past damages of $275,311 and the first $250,000 of future damages, the fee is $91,770.33 and $83,333.33, respectively.
Now we begin to approach the peculiarities of this statute. In order to enter the total lump-sum judgment pursuant to subdivision (b), this writer must first determine the attorney’s fee in accordance with the provisions set forth in subdivision (c) . Subdivision (d) has no application herein. Subdivision (c) states, in part, "Payment of that portion of the attorney’s fees related to the future periodically paid damages shall also be payable in a lump sum, based on the present value of the annuity contract purchased to provide payment of such future periodically paid damages pursuant to subdivision (e) of this section.” In order to complete the calculation required in determining the attorney’s fee, by direction of the statute, the writer must first mathematically determine the present value of the future damages, according to the provisions of subdivision (e). Subdivision (e) directs this court to enter judgment, with respect to awards of future damages in excess of $250,000 and sets forth, in part, the following instructions: "After making any adjustment prescribed by subdivisions (b), (c) and (d) of this section, the court shall enter a judgment for the amount of the present value of an annuity contract that will provide for the payment of the remaining amounts of future damages in periodic installments. The present value of such contact shall be determined in accordance with generally accepted actuarial practices by applying the discount rate in effect at the time of the award to the full amount of the remaining future damages, as calculated pursuant to this subdivision. The period of time over which such periodic payments shall be made and the period of time used to calculate the present value of the annuity contract shall be the period of years determined by the trier of fact in arriving at the itemized verdict; provided, however, that the period of time over which such periodic payments shall be made and the period of time used to calculate the present value for damages attributable to pain and suffering shall be ten years or the period of time determined by the trier of fact, whichever is less * * * The annual payment for the first year shall be calculated by dividing the remaining amount of future damages by the number of years over which such payments shall be made and the payment due in each succeeding year shall be computed by adding four percent to the previous year’s payment”. A rather circuitous route to take, but being *1004 fearless in the face of utter confusion, this writer, based upon the testimony given by the two economists in this case, who absolutely did not want to divulge their avenue of approach to this problem, or to explain their mathematics lest we find that even we could calculate same, has made the following determinations.
The first step is to decrease the itemized future damages by the lump-sum payment of $250,000, broken down in appropriate percentages, as follows: (a) medical expenses become $322,675, having been reduced by 16.33% or $40,825 (of the $250,000 lump sum); (b) loss of earnings becomes $1,420,300, having been reduced by 71.88% or $179,700; (c) pain and suffering becomes $177,550 having been reduced by 8.98% or $22,450; (d) replacement cost of wood heat becomes $11,100, having been reduced by 0.56% or $1,400; and (e) loss of household services becomes $44,375, having been reduced by 2.25% or $5,625.
The next step is to transpose the now modified future damages to present value.
Both parties called and questioned as witnesses during the July 1991 hearing economists, in support of their respective contentions about future losses. Plaintiffs’ economist testified that the correct discount rate to be used in reducing future damages to present value was 6.38%, while defendant’s economist testified that 8% was the correct rate. In Ursini v Sussman (supra, at 730), the court held, in part, "in discussing the appropriate discount rate to be used in reducing future losses to present value, the testimony of all nine [economists over the past several years] fell within the range of 6% to 8%. The court, thus, is adopting a discount rate of 7.5%. The use of such a discount rate (at the upper end of the 6% to 8% range) is, in my view, in keeping with the intent of the Legislature. A higher discount rate reduces the attorney’s fee thus providing greater payment to the client and further serves to reduce the defendant’s premium (or cost) for the annuity policy required by the judgment.” (Italics supplied.) This writer also believes that the legislative intent was to provide the greater payment to the client. Taking into consideration the testimony offered by the economists, and the prevailing market situation at the time of the award, this court shall apply the discount rate of 7.5%. Utilizing a 7.5% discount rate, the future payment shall be reduced to present value in the following manner: a) medical expenses have a present value of $180,709,147; b) loss of earnings has a present *1005 value of $913,633.540; c) pain and suffering has a present value of $142,950.831; d) replacement cost of wood heat has a present value of $7,140.274; and e) loss of household service has a present value of $28,545.017, for a total present value of $1,272,978.811. The actual math involved in arriving at present value is extremely time consuming, but no mystery. The more expedient manner in which to proceed is to find a qualified annuitist with a computer, who will in turn set up a schedule for you, starting at $1, increasing yearly at 4% per the statute, applying the applicable discount rate to each year, and arriving at a factor, which you can then use in your calculations.
Having determined the present value of the various items of future damages, the attorney’s fee of 33⅓% of future periodically paid damages based on present value, shall be one third of $1,272,978.81, amounting to $424,326.27. Adding this amount to the already determined fees of $91,770.33 and $83,333.33, this writer arrives at an attorney’s fee of $599,429.94.
Obviously, the attorney’s fee on future damages as calculated above, which is payable in a lump sum, must next be deducted from the full award of future damages (modified by the $250,000) in order to determine the correct periodic payment to the plaintiff of each item of future damages. Subtracting the one-third attorney’s fee from the modified future damages award, this writer arrives at the following figures: a) medical expenses of $322,675 less a fee of $60,236.38 equals $262,438.62; b) loss of earnings of $1,420,300 less a fee of $304,544.50 equals $1,115,755.50; c) pain and suffering of $177,550 less a fee of $47,650.28 equals $129,899.72; d) replacement cost of wood heat of $11,100 less a fee of $2,380.09 equals $8,719.91; and e) loss of household services of $44,375 less a fee of $9,515.01 equals $34,859.99. It should be noted here that the wording in subdivision (e) which refers to “the remaining amount of future damages” led this writer to surmise that the attorney’s fee, which is based on present value of the future damages adjusted only by the proportionate amount of the lump sum of $250,000, is subtracted from the future dollars awarded by the jury and not from its present value.
Having done the above, the last step, before entering judgment, in order to arrive at the annual payments to the plaintiff of the remaining future damages, is the simple arithmetic procedure of dividing the remaining amounts of future *1006 damages by the jury-awarded period of time over which such payments shall be made, keeping in mind the cap of 10 years for pain and suffering. The results in this case are as follows: a) $7,498.25 in the first year for medical expenses ($262,438.62 divided by 35 years); b) $44,630.22 in the first year for loss of earnings ($1,115,755.50 divided by 25 years); c) $12,989.97 in the first year for pain and suffering ($129,899.72 divided by 10 years); d) $348.80 in the first year for replacement cost of wood heat ($8,719.91 divided by 25 years); and e) $1,394.40 in the first year for loss of household services ($34,859.99 divided by 25 years).
Having followed all of the provisions of CPLR article 50-B as this writer interprets them, this court, as it is directed to do in said statute, does hereby enter judgment in the following manner:
1) Judgment is entered in lump sum in favor of plaintiff and against defendant for the past damages awarded in the sum of $275,311 and for future damages not in excess of $250,000, amounting to $525,311, plus the attorney’s fee on future damages, in the sum of $424,326.27, totaling $949,637.27; and does further direct
2) The defendant and its insurance carrier to purchase and pay for an annuity contract issued by a qualified carrier, approved by the New York State Superintendent of Insurance and consented to by this court, which shall provide for the payment of the annual payments of such remaining future damages, in the following amounts and over the following period of time:
a) $7,498.25 for the first year, and each year thereafter for 35 years, increased annually at 4% compounded annually; and
b) $44,630.22 for the first year, and each year thereafter for 25 years, increased annually at 4% compounded annually; and
c) $12,989.97 for the first year, and each year thereafter for 10 years, increased annually at 4% compounded annually; and
d) $348.80 for the first year, and each year thereafter for 25 years, increased annually at 4% compounded annually; and
e) $1,394.40 for the first year, and each year thereafter for 25 years, increased annually at 4% compounded annually; and does hereby direct
3) In accordance with the provisions of CPLR 5041 (e) "Where payment of a portion of the future damages terminates in accordance with the provisions of this article, the four percent added payment shall be based only upon that *1007 portion of the damages that remains subject to continued payment. Unless otherwise agreed, the annual sum so arrived at shall be paid in equal monthly installments and in advance”; and does hereby direct
4) A copy of the annuity contract is to be provided to plaintiffs’ attorney; and does hereby direct
5) Plaintiffs shall be entitled to interest and costs.