OPINION OF THE COURT
Louise Gruner Gans, J.
Defendant has moved pursuant to CPLR 4546 for a hearing to determine the extent of Federal, State and local personal income taxes that plaintiff would have been obligated to pay on that portion of the jury verdict for past and future loss of earnings, and upon such determination for an order reducing such jury verdict. Defendant further objects to the proposed structured judgment submitted by plaintiff, specifically the inclusion of postjudgment interest on future payments, and the method of apportioning attorney’s fees to future damages. Plaintiff cross-moves pursuant to 22 NYCRR 130-1.1 for sanctions, costs and attorney’s fees for frivolous litigation.
Contrary to plaintiff’s contentions, defendant is not moving to set aside the verdict pursuant to CPLR 4404. Rather, this motion is based upon two statutory provisions that are separate and distinct from CPLR 4404. First, CPLR 4546 requires the court in a medical malpractice action to make a determination as to the plaintiffs income tax liability. This determi *829 nation must be made outside the presence of the jury and only after the jury has awarded lost past or future earnings. (1 NY PJI 2:151E [1995 Supp].) Second, in a medical malpractice action, CPLR 5031 requires the court to structure the judgment for any amount of future damages exceeding $250,000. The issues as to the calculation of the annuity payments and interest have been raised by defendant in response to plaintiffs proposed structured judgment.
Pursuant to CPLR 4546, defendant is entitled to a hearing as to the Federal, State and local personal income taxes that plaintiff would have been obligated to pay on the award for past and future loss of earnings. Although it would have been preferable for defendant to have raised the income tax issue either in December 1994 when defendant argued the motion to set aside the verdict and submitted his own proposed calculations as to the structured judgment, or in January 1995 when the court rendered her decision on that motion on the record, there is nothing in the CPLR to preclude defendant from raising this issue now, especially since judgment has not yet been entered. Thus, defendant shall have an opportunity to establish "with reasonable certainty” the amount of personal income tax that plaintiff would have been required to pay on the jury’s award for lost past and future earnings. (CPLR 4546 [3].) The parties are directed to appear before this court on June 26, 1995 at 9:30 a.m. for the purpose of a hearing pursuant to CPLR 4546. Considering Mr. Silvestri’s single status and his limited income, the hearing should be brief.
Turning to the issue of postjudgment interest, in light of the Court of Appeals decision in Rohring v City of Niagara Falls (84 NY2d 60 [1994]), defendant’s contention that he should not be obligated to pay postjudgment interest on the annuity portion of judgment is without merit.[1] Defendant’s appellate counsel, Kenneth Mauro, submitted an affirmation in support of the instant motion. Mr. Mauro also appeared as counsel for amici curiae in the Rohring case, arguing as he does here that interest should not be calculated on the portion of the damage award paid to plaintiff in the future. Rejecting that argument, the Court of Appeals held that "future damages are properly deemed to be liabilities fully owed by *830 defendants as of the date of the liability verdict * * * and interest was properly charged against the present value of future damages from that date.” (Supra, at 70; see also, Johnston v Joyce, 192 AD2d 1124 [4th Dept 1993].) No arguable, basis exists for limiting the holding of Rohring to CPLR 5002 postverdict interest, since both postverdict and postjudgment interest were at issue. (Rohring v City of Niagara Falls, supra, at 69.) Therefore, pursuant to CPLR 5003, plaintiff is entitled to postjudgment interest on the jury’s total award of future damages from the date of entry of judgment until such time as defendant satisfies it by paying the lump sum provided in the statute and delivering an annuity contract for the payment of periodic installments. (Johnston v Joyce, supra, at 1126.)
The final issue raised by defendant’s motion is the most troublesome and difficult, since it involves the interpretation of CPLR article 50-A and the mathematical calculations of the structured judgment pursuant to that article. When the parties appeared before this court on December 20, 1994 to argue the motion to set aside the verdict, defendant submitted its own proposed calculations for the structured judgment. The parties consented to a discount rate of 7% and plaintiff voiced no objection to defendant’s calculations.
After the court rendered its decision on defendant’s motion to set aside the verdict, plaintiff submitted a proposed structured judgment on January 23, 1995. The court rejected plaintiff’s two-page judgment as insufficient, and suggested that plaintiff’s counsel review the form of the judgment devised by Justice Gammerman in Ursini v Sussman (143 Misc 2d 727 [Sup Ct, NY County 1989]).
On February 10, 1995, plaintiff submitted a revised judgment, which not only followed the detailed form used in Ursini (supra) but also adopted Justice Gammerman’s 1989 application of the statute. Plaintiff, however, failed to take into account the subsequent change in the substantive application of the statute which has resulted from the decision of the Court of Appeals in Rohring (supra), as well as the Appellate Division’s decisions in Rohring (192 AD2d 228 [4th Dept 1993]) and Reed v Harter Chair Corp. (196 AD2d 123 [3d Dept 1994]; see also, Ambrose v Rockland Tel. Co., NYLJ, May 24, 1994, at 22, col 6 [Civ Ct, NY County]; Mentzer, Court Sticks to Shores of Existing Law, NYLJ, Oct. 3, 1994, at S4).
The trial court in Rohring (supra) followed Ursini (supra) to *831 the extent it reduced to present value the gross amount of future damages (less the $250,000 lump sum), computed the attorney’s fees based upon that reduced sum, and deducted the attorney’s fees from the gross amount of future damages which remained after deducting the $250,000 lump-sum award (amount before reduction to present value). Reversing the trial court, both the Court of Appeals and the Appellate Division concluded that the proper method is to deduct the attorney’s fees from the present value of the future damages, and to use this net sum as the starting point for computing the annuity. Thus, the Court of Appeals set to rest at least one controversial question regarding the interpretation of articles 50-A and 50-B.
Here, there are two issues concerning plaintiffs proposed structured judgment and defendant’s alternative calculations. The first is whether plaintiff properly calculated the portion of the attorney’s fees attributable to the future damages. And the second is whether plaintiff and/or defendant complied with Rohring (supra) by using the present value of the future damages as the sum from which the portion of the attorney’s fees attributable to future damages is deducted, and thereafter calculating the periodic payments that plaintiff will be entitled to receive.
The court agrees with defendant that plaintiff failed properly to apportion the attorney’s fees to the future damages. Rather than determining a ratio by which a proportionate share of the fees is attributed to each element of future damages (Andrialis v Snyder, 159 Misc 2d 419 [Sup Ct, NY County 1993]), plaintiff both calculated the total fee and apportioned it all in one step. Although the parties agree that based on the Judiciary Law § 474-a sliding scale, the total attorney’s fee is $328,605.10, plaintiff relied on an arbitrary ordering of and dividing line in the sliding scale to determine the amount of fees on the future payment. Applying the sliding scale first to the total lump-sum payments ($959,000) and then separately to the future payments ($827,051), plaintiff arrives at the amount of fees on the future payments ($99,305.10). Section 474-a, however, is merely the method mandated by statute for determining the total amount of attorney’s fees in a medical malpractice case, and does not take into account the percentage the total attorney’s fees are of the plaintiffs total recovery, as that term is defined on page 8 infra.
As to the second issue of complying with Rohring (supra), *832 both plaintiff and defendant have erred. They have each taken the amount of attorney’s fees they believe is attributable to future damages, and deducted it from the unreduced amount of future damages ($590,740.73 lost earnings, and $509,259.30 pain and suffering),[2] rather than the present value of future damages.
Because neither plaintiff’s nor defendant’s calculations are correct, the court will attempt to make its own calculations, guided by the few courts who have previously wrestled with this "impossible” statute.
The amount of attorney’s fees in this medical malpractice action is governed by the sliding scale enumerated in section 474-a of the Judiciary Law: 30% of the first $250,000 recovered, 25% of the next $250,000, 20% of the next $500,000, 15% of the next $250,000, and 10% of any amount exceeding $1,250,000. Applying this formulation, the parties agree that the total amount of attorney’s fees is $328,605.10.[3] The parties have properly computed this amount pursuant to CPLR 5031 (c), which requires the deduction of a proportional share of the $250,000 lump sum from each item of the jury’s award for future damages, as well as the reduction to present value. The award is based upon the total sum of $1,786,051, consisting of the $709,000 award for past damages, the $250,000 lump-sum payment for future damages, and the $827,051 amount for future damages reduced to present value.[4]
The question now is what portion of the $328,605.10 total attorney’s fees award is related to the future periodically paid damages. Plaintiff and defendant each employ a different method of apportioning the attorney’s fees to the future periodic payments, and as a result arrive at different amounts. Plaintiff’s method is based solely upon the sliding scale percentages used to calculate the fees, and does not involve any computation that mathematically attributes a proportionate *833 share of the fee to each element of future damages (see, plaintiffs schedule B). Defendant’s method is more mathematically sound, since it determines the ratio between the present value of future payments and the total net award, and applies that percentage to the total fee (see, defendant’s schedule B).
In Andrialis v Snyder (159 Misc 2d 419 [Sup Ct, NY County 1993], supra), Justice Gammerman explains that the attorney’s fees "should be deducted equally from each item of the [future damages] award” by first determining the percentage the total attorney’s fees are of the "total recovery.” (Supra, at 422.) The "total recovery” is the total net recovery, i.e., the $1,786,051 figure used to compute the attorney’s fees. (Supra.) The attorney’s fees of $328,605.10 are approximately 18.4% of the $1,786,051 total net recovery.[5]
The final step is to deduct this percentage from the present value of each item of future damages, in order to arrive at the amount of the periodic payments. (Rohring v City of Niagara Falls, supra, at 68; Reed v Harter Chair Corp., 196 AD2d 123, 126, supra.) On the basis of Rohring, this step differs from that followed in Ursini and Andrialis (supra) which deducted this percentage from the full unreduced amount of future damages.
Taking the agreed upon present value amounts of $393,500 for future lost earnings and $433,551 for future pain and suffering, the portion of the attorney’s fees on each sum is $72,397.77 and $79,766.52, respectively.[6] Deducting $72,397.77 from $393,500 leaves a balance of $321,102.23 for future lost earnings, which must be divided by 29, the number of years for which the jury made the award. Deducting $79,766.52 from $433,551 leaves a balance of $353,784.48 for future pain and suffering, which must be divided by 10, the maximum number of years for which this award can be made, regardless of the jury’s finding. These calculations yield initial annual periodic payments of $11,072.49 for future lost earnings, and $35,378.45 for future pain and suffering, and shall be increased by 4% compounded annually for periods of 29 years *834 and 10 years, respectively. (CPLR 5031 [e]; Rohring v City of Niagara Falls, 192 AD2d, at 232, affd 84 NY2d 60, supra.)
Depending upon the outcome of the CPLR 4546 hearing as to plaintiff’s income tax liability, the figures as to past and future loss, of earnings may need adjustment. Plaintiff shall therefore await the court’s determination of that hearing before submitting a revised judgment in accordance with this decision and order. Plaintiff’s cross motion for sanctions is denied.

. By letters dated December 23, 1994 and January 23, 1995, defendant also objected to plaintiff’s request for CPLR 5002 postverdict interest. Defendant has apparently withdrawn that objection since it is absent from his motion papers.

. In plaintiff’s schedule C (annexed to plaintiff’s proposed judgment), the attorney’s fees are deducted from $20,370.37 and $50,925.93, which when multiplied by the number of years for each award equal $590,740.73 and $509,259.30.

. The parties have agreed that the attorney’s fees are calculated on the total net award of $1,786,051 (past damages of $709,000, lump-sum award for future damages of $250,000, and present value of future payments of $827,051).

. The parties have likewise agreed that using a 7% discount rate, the future damages reduced to present value equal $827,051, with $393,500 for future lost earnings and $433,551 for future pain and suffering.

. 18.4% is the approximate percentage. In apportioning the attorney’s fees, however, the court used the more precise amount arrived at by dividing $328,605.10 by $1,786,051: .183984163946.

. The total of $72,397.77 and $79,766.52 is $152,164.29, which is nearly identical to the $152,177.02 amount of fees defendant contends should be attributed to the future periodic payment portion of the judgment. The difference results from defendant’s use of a rounded off percentage.